In re GEORGIA & F. RY.

(District Court, S. D. Georgia, N. D.  July 30, 1914.)

ARBITRATION AND AWARD (§ 68*)—RAILROAD EMPLOYÉS—AWARD—EXCEPTIONS.
   Where a controversy between a railroad company and certain of its em-
ployés was submitted to arbitration, without limitation as to the scope of
the inquiry or any method prescribed as to how the arbitrators should
ascertain a reasonable wage to be paid to the employés, which was one
of the issues in controversy, as provided by Arbitration Act (Act July
15, 1913, c. 6, 38 Stat. 103), the award of the arbitrators was only subject
to such exceptions as attacked the jurisdiction, right, or authority of the
arbitrators to determine.
   [Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§
343–351; Dec. Dig. § 68.*]

In the matter of proceedings for the arbitration of controversies
between the Brotherhood of Locomotive Engineers and the Brother-
hood of Locomotive Firemen and Enginemen and the Georgia & Florida
Railway, under Arbitration Act July 15, 1913, superseding the Erd-
man Act.  On exceptions to the Board of Arbitrators.  Dismissed.

Wm. H. Barrett, of Augusta, Ga., General Counsel for Georgia &
F. Ry.

Henry C. Roney, of Augusta, Ga., for Brotherhood of Locomotive
Engineers and Brotherhood of Locomotive Firemen and Enginemen.

SHEPPARD, District Judge.  This case presents for consideration
certain exceptions, four in number, to the award of the arbitrators, in
the matter of the controversy between the Brotherhood of Locomotive
Engineers and the Brotherhood of Locomotive Firemen and Engine-
men and the Georgia & Florida Railway.

The contention between the parties arose over the application of the
employés for an increase of wages.  The provisions of the Newlands
Act for the mediation and conciliation of controversies between rail-
road companies and their employés, approved July 15, 1913, were in-
voked, and a board of three arbitrators was organized in accord with
the liberal terms of the act.  Several matters of difference as to modi-
fication of rules, hours of service, compensation while in attendance
upon court as witnesses, and for an increase of pay were accordingly
submitted for arbitration.  The arbitrators qualified as provided, a
written submission of the matters in controversy was entered into, and
the hearing proceeded regularly to an award on all the questions sub-
mitted, and one of the findings allowed an increase of wages to the
employés.

Section 11 of the act, under which the arbitration was agreed upon,
provides that the award and the papers and proceedings, including the
testimony relating thereto, certified under the hands of the arbitrators,
and which shall have the force and effect of a bill of exceptions, shall
be filed in the clerk's office of the district court where the controversy
arose, and shall be final and conclusive upon the parties to the agree-
ment unless set aside for error of law apparent upon the record.  The
award was filed in compliance with the requirements of the statute.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Increased pay allowed to the employés was from 10 to 12 per cent. over the wages previously paid, and the method pursued by the board in determining that the employés were entitled to an increase of wages constitutes the subject-matter of four exceptions interposed by the railway to the legality of the award.

Section 8 of the act provides that, when the award is filed in the clerk's office, it shall go into practical operation, and judgment shall be entered thereon at the expiration of 10 days, unless within such 10 days either party shall file exceptions thereto for matter of law apparent upon the record.

The first two exceptions noted in the brief include an interpretation of the word "arbitration" made by the chairman of the board at the conclusion of the argument, to wit, "All matters of arbitration are matters of compromise," and it is argued that if this principle, declared as the view of the chairman, influenced the award, it was error, but it is not disclosed by the record how this mere ipse dixit of one member of the board affected the award, and, as will be seen later from the disposition made of the exceptions, is not, in the opinion of the court, such error of law in contemplation of the statute as would justify a judicial review of the award.

The second exception challenges the correctness of the issue before the board as expressed by Mr. Burgess, representative of the employés at the hearing, viz.:

"The petitioners or plaintiffs desire to state that, to our mind, this question is devoid of any complex or intricate features. It is a simple problem as to whether the engineers and firemen on the Georgia & Florida Railway receive the same compensation for similar services rendered as obtains on other roads in this southern territory."

Under this exception it is also urged, in the nature of assignment of error, that other railroads in the same territory are paying better wages for similar services is not sufficient of itself to authorize an increase in the wages of the employés in question; that there was no evidence that such increase was otherwise proper. Furthermore, that there was no evidence showing what wages were being paid to the same class of employés by all the other roads in the same territory, nor the average of such wages. It is admitted that there was some evidence as to what wages were paid by some of the other roads in this territory; but the evidence showed, it is insisted, that there was a marked difference on the different roads, especially between the smaller and the larger roads.

The third exception challenges the principle adopted by the board, as substantially quoted from the award, namely, that there is no difference in principle between the inability of a road to meet its operating expenses and its inability to pay dividends on its stock and interest on its indebtedness. In either event, as above stated, the employés for the service rendered have the first claim on the earnings of the road for a reasonable and just compensation. Therefore, in reaching the conclusion we have in determining the reasonable rate to be paid the employés, we have not considered the inability of the road to meet its operating expenses as an element therein.

The fourth exception is stated in the language of pleader, as follows:

"The award fixing the wages is in contradiction to the principles found to be governing and unsupported by the testimony. While declaring that the wages should be fixed solely according to what is paid by other roads in this territory for like service under similar conditions, the award fails to show that there is an existing prevailing wage on said roads, which was adopted by the arbitrators, and shows affirmatively that they considered the average of only a limited number of roads; and fails to show that they considered in this average the wages on shorter roads."

As has been already observed, this was a proceeding in arbitration of the controversy between the railway and its employés of a certain class, had in pursuance of the provisions of an act of Congress, July 15, 1913, known as the Arbitration Act, adopted in lieu of the Erdman Act (Act June 1, 1898, c. 370, 30 Stat. 424 [U. S. Comp. St. p. 3205]), but containing substantially many of the provisions of the latter act, among them section 3, which reads:

"That whenever a controversy shall arise between an employer or employers and employés subject to this act, which cannot be settled through mediation and conciliation in the manner provided in the preceding section, such controversy may be submitted to the arbitration of a board of six, or, if the parties to the controversy prefer so to stipulate, to a board of three persons, which board shall be chosen in the following manner: In the case of a board of three, the employer or employers and the employés, parties respectively to the agreement to arbitrate, shall each name one arbitrator; and the two arbitrators thus chosen shall select the third arbitrator; but in the event of their failure to name the third arbitrator within five days after their first meeting, such third arbitrator shall be named by the board of mediation and conciliation. In the case of the board of six, the employer or employers and the employés, parties respectively to the agreement to arbitrate, shall each name two arbitrators, and the four arbitrators thus chosen shall, by a majority vote, select the remaining two arbitrators; but in the event of their failure to name the two arbitrators within fifteen days after their first meeting the said two arbitrators, or as many of them as have not been named, shall be named by the board of mediation and conciliation."

Section 4 provides:

"Sec. 4. That the agreement to arbitrate: First. Shall be in writing. Second. Shall stipulate that the arbitration is had under the provisions of this act. Third. Shall state whether the board of arbitration is to consist of three or six members. Fourth. Shall be signed by duly accredited representatives of the employer or employers and of the employés. Fifth. Shall state specifically the questions to be submitted to the said board for decision. Sixth. Shall stipulate that a majority of said board shall be competent to make a valid and binding award. Seventh. Shall fix a period from the date of the appointment of the arbitrator or arbitrators necessary to complete the board, as provided for in the agreement, within which the said board shall commence its hearings. Eighth. Shall fix a period from the beginning of the hearings within which the said board shall make and file its award; provided, that this period shall be thirty days unless a different period be agreed to. Ninth. Shall provide for the date from which the award shall become effective and shall fix the period during which the said award shall continue in force. Tenth. Shall provide that the respective parties to the award will each faithfully execute the same. Eleventh. Shall provide that the award and the papers and proceedings, including the testimony relating thereto, certified under the hands of the arbitrators, and which shall have the force and effect of a bill of exceptions, shall be filed in the clerk's office of the District Court of the

United States for the district wherein the controversy arises or the arbitration is entered into, and shall be final and conclusive upon the parties to the agreement unless set aside for error of law apparent on the record. * * *"

The several matters in controversy, including the rate of wages to be paid employés for 100-miles run, was submitted in writing as provided in the statute to the board, duly selected by the parties for inquiry and adjudication. Upon these issues a hearing was had, and a volume of testimony was taken, and large number of exhibits were filed, resulting in the award by a majority of the board, which found that the employés were entitled to an increase of wages.

It is observed by the express terms of the statute that the award shall be final and conclusive upon the parties unless set aside for error apparent upon the record. Thus, we are met at the threshold of the investigation with the query: Do the exceptions stated above present within the purview of the statute such errors of law as can be reviewed by the court? The only precedent that has rewarded the industry of the court for construction of the act in question is the case which construed the Erdman Act. In re Southern Pacific (C. C.) 155 Fed. 1001, where the provisions of the statute for review by the court for errors apparent upon the record were presented. There it was held that an arbitration under the former (Erdman) Act, containing essentially the same provisions as section 4 of the present act, was substantially a common-law arbitration, and the power and authority of the board rest solely on the written submission entered into by the parties, which limits and determines not only the rights of the parties, but also the extent of the powers of the arbitrators, and that the submission is to be construed according to the rules governing contracts and not those governing pleadings. By reference to paragraph 5 of section 4, it is required that the agreement shall state specifically the matters to be submitted to the board for its decision. The agreement entered into between the parties stipulates, with other things, that the controversy concerned conditions of service, and rate of wages to be paid, and we have already seen that the arbitration was pursuant to the provisions of the act, and one of the questions submitted to the board for decision was whether the employés of a class named should receive certain compensation. Neither party to the agreement proposed any rule or theory limiting the scope, or defining the basis on which a reasonable wage should be ascertained. Obviously, it was the right of either party under the statute to have prescribed the scope of the inquiry, and to have defined the principles of law or conditions of fact upon which the inquisition was to proceed and the award to be established. Doubtless, any departure from accepted rules, or failure on the part of the board to follow the adopted criteria, or the nonobservance of the restrictions imposed by agreement upon the latitude of the board's investigation, would have been cause for error apparent upon the record to which exception would lie as provided in the statute.

There were, however, no limitations by the agreement to arbitrate put upon the scope of inquiry, or any method prescribed as to how the board was to ascertain a reasonable wage to be paid the employés. It appears that the alleged errors presented by the exceptions raise

questions of mixed law and fact put in issue by the submission without limitation, and having been heard and determined by the court constituted by consent of the parties called to arbitrate, that is to say, to hear, compare, adjust, and adjudicate the controversies, is as conclusive of the matters submitted, as well as the process by which they were reached, as the verdict of a jury. It would seem on the facts that their judgments are reviewable for only such errors as would warrant setting aside a common-law arbitration—such error as goes to jurisdiction, right or authority of the court to determine. The award has not been assailed, it will be observed, on any ground that would avoid it for lack of jurisdiction; or any ground that would be cause for setting aside the award of a common-law arbitration; it is not pretended that it was not a legally constituted board, or that the statute under which it was organized was invalid, or that the board traveled beyond the scope of the matters properly submitted by agreement of the parties. By the agreement, the parties accepted the modus operandi of the statute for a speedy and expeditious adjustment of their differences, and thereby voluntarily waived any rights to have the questions involved determined by the strict and cumbersome rules of the courts of law. Arbitration, it is agreed, generally is a substitution by consent of the parties of a simple expeditious tribunal in lieu of courts whose procedure is circumscribed by definite rules of law.

Reviewing an arbitration proceeding authorized under a statute of Michigan for conciliation and arbitration of controversies arising between employés and employers where the award was attacked because the board exceeded its jurisdiction, the Supreme Court of Michigan in the course of its opinion said:

"To hold that the intervention of this court may be invoked to supervise, control, and direct the court of mediation and arbitration, to review its proceedings, and reverse its awards because it has not followed the technical methods and rules applied in ordinary judicial proceedings, to deprive it of its summary influence or power—if 'power' is an appropriate term to use—by dragging through the courts proceedings which the law attempts to have disposed of in ten days," would, in our opinion, "thwart the purpose of the act, and turn the court of conciliation and arbitration into the ordinary tribunal, with its attendant evils of technicality, delay, and expense to litigants." Pingree et al. v. State Court of Mediation & Arb., 130 Mich. 237, 89 N. W. Text 946.

Such courts are not confined in their scope of inquiry, nor in their determinations of questions before them, by technical rules of law that would possibly determine issues in a court of justice, but are subject to the broad terms of the statute under which they are organized. New Orleans City & L. R. Co. v. State Board of Arbitration, 47 La. Ann. 874, 17 South. 418; Standard Ency. vol. 2, 663; 3 Cyc. 728.

It is plain from the text of the act that Congress, appreciating the necessity of a forum for the arbitration of distracting controversies which often arise between employés and employers, established a tribunal to which the parties at their option might resort for a speedy determination of such controversies on their merits, without the delays incident to trials in courts of law. If the awards of such courts are to be set aside on technical grounds, or because their proceedings were not according to the rules of law, it would tend to set at nought

the good offices of Congress as expressed by the act and leave to the courts at last, in spite of legislation to the contrary, the settlement of such controversies. It was undoubtedly the intent of the Legislature that such awards should be final except for such error that would avoid the proceedings ab initio.

The exceptions should be dismissed, and the award affirmed, and it will be so ordered.